UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                        :

COACTION SPECIALTY MANAGEMENT   :
COMPANY, INC., *et al.*,                   :
                                        :

                        Plaintiffs,     :             25-CV-7815 (VSB)
                                          :

                -against-        :            OPINION & ORDER
                                          :

EMAXX INSURANCE SERVICES, LLC, *et al.*, :
                                          :

                    Defendants.  :
                                          :
------------------------------------------------------------ X

Appearances:

Guyon H. Knight
Matthew G. Horowitz
Christina G. Jackson
Mound Cotton Wollan & Greengrass LLP
*Counsel for Plaintiff*

Marc L. Abrams
John P. Sefick
Jennifer L. Zaluski
Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo P.C.
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Before me is Plaintiff's motion for a Preliminary Injunction, or in the alternative, a

motion for an order pursuant to New York Insurance Law § 1213(c)(1) requiring Defendant to

post security, and an order requesting expedited discovery.  (Doc. 17.)  For the reasons that

follow, Plaintiff's request for a preliminary injunction is DENIED.  Plaintiff's request for

expedited discovery is GRANTED.

       Further, I find that New York Insurance Law § 1213(c)(1) applies and requires Defendant

to post security with the Clerk of Court.  The parties will meet and confer on an appropriate

amount of security by January 6, 2026 and file a submission of no more than five pages informing me of their agreement as to the amount or with their respective positions on the appropriate amount of security due under § 1213(c)(1) by January 13, 2026.  All deadlines relating to Defendants' Motion to Dismiss, (Doc. 43), are adjourned *sine die* in the interim.

## I.    **Background**

Plaintiffs Coaction Specialty Management Company, Inc. ("Coaction"), New York Marine and General Insurance Company, Gotham Insurance Company, and Southwest Marine and General Insurance Company are insurance companies.  (Doc. 1 ("Compl.") ¶¶ 1–6.)  Coaction Specialty Management Company, Inc., New York Marine and General Insurance Company, and Gotham Insurance Company are New York corporations, and Southwest Marine is an Arizona corporation.  (*Id.* ¶¶ 7–10.)  Defendant eMaxx Insurance Services ("eMaxx") is "a limited liability company organized under Massachusetts law with its principal place of business in Wakefield, Massachusetts."  (*Id.* ¶11.)[1]  Defendant eCaptiv PC3-IC, Inc.  ("PC3") is an Arkansas corporation with its principal place of business in Wakefield, Massachusetts.  (*Id.* ¶ 12.)  Defendant John Ferrante is an individual domiciled in North Carolina.  (*Id.* ¶ 13.)

eMaxx is an insurance services company that "won a competitive bidding process to work with the American Automobile Association ("AAA")" in 2019 and "to set up a group captive that would offer insurance to AAA's preferred service providers—in particular, tow truck operators that perform roadside assistance for AAA members."  (*Id.* ¶ 37.)  In order to

---

[1] Plaintiff states that "[u]pon information and belief, none of the members of eMaxx Insurance Services is a citizen of Arizona, New Jersey, or New York," (Compl. ¶ 11).  For purposes of diversity of citizenship under 28 U.S.C. § 1331(a), an LLC "takes the citizenship of each of its members." *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012.)  When the parties submit their filing regarding New York Insurance Law § 1213 on or before January 6, Defendants shall also include a short statement regarding whether any members of eMaxx were citizens of Arizona, New Jersey, or New York when this action was commenced.  If so, complete diversity is destroyed and I am obligated to dismiss this case for lack of subject matter jurisdiction.  *See United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp.*, 907 F. Supp. 663, 666–67 (S.D.N.Y. 1995) (collecting cases).

provide insurance for AAA, eMaxx chose a "captive insurance" solution.  (*Id.* ¶¶ 38–44.)  As part of this solution, eMaxx established PC3 as an "incorporated protected cell," (*id.* ¶ 39), within a broader captive insurance company, known as eCaptiv LLC ("eCaptiv").

Captive insurance is an alternative method of providing an insurance solution to traditional commercial insurance.  (Doc. 29 ("Opp.") 4–5.)  Captive insurance companies can provide insurance despite not being licensed to "issue insurance policies themselves," instead "partner[ing] with a fronting company" that is a licensed insurer.  (Compl. ¶ 19.)  In such cases, the captive insurance company then reinsures the fronting company pursuant to a reinsurance contract or series of contracts.  (*Id.* ¶¶ 20–21.)  In cases where the reinsuring captive insurer is not licensed to insure in a particular state but the fronting company is, which is "generally" the case, fronting insurers typically "cannot take credit for reinsurance placed with captives," on their balance sheets.  (*Id.* ¶¶ 22–23.)

However, there is an exception to this rule, which allows for fronting companies and captive reinsurers to jointly create trust accounts called "Regulation 114 trusts," which are "strict[ly]" regulated under New York State Law.  (*Id.* ¶¶ 25–26.)  "Regulation 114 places strict requirements on the trust accounts.  Among other things, the trust account must be collateralized with at least 102% of the reinsurer's entire obligations under its agreement with the ceding company."  (*Id.* ¶ 26.)  "If the trust account does not comply with Regulation 114—for instance, if the unauthorized reinsurer does not post sufficient collateral—the cedent will take a Schedule F penalty."  (*Id.* ¶ 27.)

According to Plaintiffs, Defendants breached their obligations under a series of four agreements:  (1) the "Reinsurance Agreement," which was an agreement between Plaintiffs and PC3 for PC3 to reinsure Coaction, (Doc. 20 ("Mot.") 4); (2) the "Membership Agreement,"

3

which was a contract directly entered into between PC3 and individual members, (Mot. 5); (3) the "Niche Management Agreement," which authorized eMaxx "to market, underwrite, execute, and issue insurance policies fronted by Coaction to members of PC3," (Mot. 3–4); and (4) the "Trust Agreement," which caused certain obligations to inure to Defendants via the establishment of a Regulation 114 trust account. (Mot. 4–5.) It is to remedy alleged breach of Defendants' Trust Agreement obligations that Plaintiffs now move for a preliminary injunction. (Mot. 1 ("As of the date of this motion PC3 has failed to post $6,028,331.99 in security required by the parties' agreements and Regulation 114.").) Plaintiffs argue that PC3's failure to post security caused the Regulation 114 trust to fall out of compliance with New York State Law and that it will therefore have to take a "Schedule F penalty," which they allege constitutes irreparable harm. (*Id.*)

Alternatively, Plaintiffs argue that PC3 is required to post "security pursuant to New York Insurance Law § 1213(c)(1)" and that it is entitled to expedited discovery of certain "records related to the parties' business dealings." (Mot. 1–2.)

On September 9, 2025, Plaintiffs filed their complaint. (Compl.) On October 1, 2025, Plaintiffs filed a motion for a preliminary injunction, (Doc. 17), accompanied by two declarations, (Docs. 18–19), and a memorandum of law, (Mot.). On October 24, 2025, Defendants filed their opposition brief, (Opp.), accompanied by two affidavits, (Docs. 31–32). On November 7, 2025, Plaintiffs filed their reply memorandum of law, (Doc. 40 ("Reply")), accompanied by two affirmations, (Docs. 41–42).

## II.     <u>Legal Standard</u>

A preliminary injunction "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v.*

4

*Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, (1997)).  The Second "[C]ircuit has required a party seeking a preliminary injunction to show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal quotation marks omitted).

"The burden is even higher on a party [] that seeks 'a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (quoting *Citigroup*, 598 F.3d at 35 n.4).  "A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Id.* (quoting *Citigroup*, 598 F.3d at 35 n.4).

"[I]t has always been the rule that the movant bears the burden of persuasion to establish the situation meets the standard for a preliminary injunction, and must offer proof beyond the unverified allegations of the pleadings." *Allens Creek/Corbetts Glen Pres. Grp., Inc. v. Caldera*, 88 F. Supp. 2d 77, 83 (W.D.N.Y. 2000) (quoting *Bascom Food Prods. Corp. v. Reese Finer Foods, Inc.*, 715 F. Supp. 616, 624 n.14 (D.N.J. 1989)), *aff'd sub nom.*, 2 F. App'x 162 (2d Cir. 2001) (summary order).  The "requirement for substantial proof" for the party seeking injunctive relief "is much higher" than it is for "a defendant's motion for summary judgment." *Mazurek*, 520 U.S. at 972.

Where an "injunction is 'mandatory' . . . the movant must show a 'clear' or 'substantial' likelihood of success on the merits . . . and make a 'strong showing' of irreparable harm." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (first quoting *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995), then quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999), and *Doe v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981)). "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trs. for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 727 (S.D.N.Y. 2019) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted)). To establish irreparable harm, movants must demonstrate "they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). Irreparable harm is one for which "money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *N.Y. Pathological & X–Ray Lab'ys., Inc. v. Immigr. & Naturalization Serv.*, 523 F.2d 79, 81 (2d Cir. 1975)).

The Second Circuit has found that, for purposes of a preliminary injunction motion, "an evidentiary hearing is not required when, *inter alia,* disputed facts are amenable to complete resolution on a paper record." *Moore*, 409 F.3d at 512 (2d Cir. 2005) (paraphrasing *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998)); *see also Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 37 (2d Cir. 1988) (noting that oral testimony was not required on a motion for a preliminary injunction where the "most significant factors . . . would have remained essentially unchanged by any additional evidence").

### III.    Discussion

#### A.    *Preliminary Injunction*

As a preliminary matter, I find that a hearing on this matter is not required because complete resolution of the motion before me is possible on the extensive paper record—including at least seven affidavits or declarations, (*see* Docs. 18–19, 30–32, 41–42), submitted by the parties, totaling hundreds of pages, including exhibits.

#### 1.  Plaintiffs Seek a Mandatory Injunction

Defendants explain that Plaintiffs are seeking a mandatory injunction rather than a prohibitory injunction because the requested relief "seeks to modify the status quo."  (Opp. 12.) The "'[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy."  *XL Specialty Ins. Co. v. Level Glob. Invs., L.P.*, 874 F. Supp. 2d 263, 272 (S.D.N.Y. 2012) (quoting *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994)).  Defendants argue that the status quo is the current status quo, in which Defendants do not owe Plaintiffs more than six million dollars based on calculations that they dispute, and claim were not made in good faith.  This argument is unrebutted by Plaintiffs. (*See* Reply *passim.*)[2]

The Second Circuit has formulated this test in two ways.  Under one formulation, the inquiry is a conjunctive test that requires both a "clear or substantial likelihood of success on the merits" and "a strong showing of irreparable harm."  *See Actavis PLC*, 787 F.3d at 650 (internal

---

[2] Plaintiffs fail to dispute that the injunction they seek is a mandatory injunction by providing an alternative status quo *ex ante*; therefore, I accept Defendants' uncontested assertion that I should accept the current status quo as the relevant one for purposes of this inquiry.  *See Vasquez v. New York City Dep't of Educ.*, No. 11-CV-3674, 2015 WL 3619432, at *14 (S.D.N.Y. June 10, 2015) (an argument is "waived or abandoned if a party fails to make it.") (collecting cases), *aff'd*, 667 F. App'x 326 (2d Cir. 2016).  Indeed, Plaintiffs' most-cited case, *New York Marine & General Insurance Company v. Millennia Assurance, Inc.*, which they claim is on all fours, labelled the injunction sought there a "mandatory" one.  241 A.D.3d 1090 (1st Dept. 2025).

quotation marks omitted).  The more long-standing test, taken from *Tom Doherty*, is a disjunctive one that asks whether either the moving party has made either "a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  60 F.3d at 34 (internal quotation marks omitted).  These two tests are often used interchangeably by courts in this District.  *See, e.g.*, *Isaac v. Schiff*, No. 21-CV-11078, 2022 WL 3290679, at *1 (S.D.N.Y. Aug. 11, 2022); *Hulinsky v. Cnty. of Westchester*, 670 F. Supp. 3d 100, 109 (S.D.N.Y. 2023), *aff'd sub nom. 40 Days for Life v. Cnty. Of Westchester*, No. 23-804-CV, 2024 WL 2813930 (2d Cir. June 3, 2024).  The most recent Second Circuit cases have used the former formulation.  *See JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667, 669 (2d Cir. 2023); *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024).  However, *Tom Doherty* is still cited in these cases as good law.  *See Agnant*, 62 F.4th at 673 (analyzing whether "a loss of prospective goodwill" suffices to meet the "strong showing of irreparable harm" prong of the conjunctive test with reference to *Tom Doherty*); *Daileader*, 96 F.4th at 358 (explaining that *Tom Doherty* supports concluding that a movant has failed to make a strong showing of irreparable harm when "a monetary award may provide adequate compensation.")

### 2.  Likelihood of Success on the Merits

I deny Plaintiffs' request for a preliminary injunction because Coaction has not established a likelihood of success on the merits in its claims against Defendants.  Plaintiffs fail to demonstrate "that [they are] 'likely' to succeed on the merits," not just "show [] that [their] theory of the case is 'substantial and not frivolous.'"  *Starbucks Corp. v. McKinney*, 602 U.S. 339, 350 (2024).  The party moving for a mandatory injunction must "demonstrate a clear or

substantial likelihood of success on the merits of his claims." *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).

Here, Plaintiffs confuse their burden and misstate their obligations under the Reinsurance Contract. As an initial matter, Plaintiffs incorrectly state that the "Reinsurer's Annual Aggregate Liability" calculations "are irrelevant as a matter of law." (Reply 5.) As Plaintiffs acknowledge, the Reinsurance Contract states that "the estimate of total losses expected to fall within the Retention as calculated from time to time by [Plaintiffs] in good faith." (Doc. 18-1 at 1.) That the contract provides for Plaintiffs and not Defendants to calculate the expected loss does not relieve them of their obligation to calculate the expected loss "in good faith." (*Id.*) Here, Defendants provide alternative calculations to support their claim that Coaction did not calculate the expected loss in good faith and that this constituted a material breach of the Reinsurance Contract, excusing their performance under the Reinsurance Contract. *See* Restatement (Second) of Contracts § 237 (Am. Law Inst. 1981) ("It is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.") Plaintiffs stretch this clause too far in arguing that, in and of itself, it extinguishes the rights of Defendants to ensure that Coaction calculated the expected loss sums in good faith. This reading of the contract would effectively render the good faith requirement meaningless.

Moreover, Plaintiffs are wrong to suggest that they need not "give detailed proof" that they remained materially in compliance with the contract. Plaintiffs may be correct that they would be entitled to inferences in their favor at the motion to dismiss stage of the litigation, but to make out the elements of a mandatory preliminary injunction, "a plaintiff cannot rest on such mere allegations, as would be appropriate at the pleading stage." *Cacchillo*, 638 F.3d at 404 (2d

Cir. 2011) (internal quotation marks omitted and cleaned up); *see also Victorio v. Sammy's Fishbox Realty Co.. LLC*, No. 14-CV-8678, 2014 WL 7180220, at *4 (S.D.N.Y. Dec. 12, 2014) ("When considering a motion for a preliminary injunction, unlike a motion to dismiss, the Court need not accept as true the well-pleaded allegations in Plaintiff['s] complaint.") (citing *Incantalupo v. Lawrence Union Free Sch. Dist. No. 15*, 652 F. Supp. 2d 314, 317 n.1 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 59 (2d Cir. 2010) (summary order)). An unsubstantiated and conclusory statement from the Vice President of Coaction that "the amounts owed by PC3 are within the Reinsurer's Annual Aggregate Liability," (*see* Doc. 18 ¶ 21), is not sufficient to rebut the detailed calculations provided by Defendants that suggest that Coaction violated the terms of the Reinsurance Agreement by ceding more than the aggregate annual limit.

In an attempt to demonstrate that Defendants' calculations are incorrect, Plaintiffs submit a dueling set of alternative calculations premised on the fact that Defendants' figures are incorrectly based on "Program Year[s]" rather than "Policy Year[s]" and so are incorrectly done. (Doc. 41 ¶ 16.) However, this is not the only material dispute between the parties, because Plaintiffs claim that calculating the figures using the "Program Year" rather than the "Policy Year," means that Defendants still owe Plaintiffs, variously, $2,397,667, (Reply 5–6), or $3,996,112, (Doc. 41 ¶ 16). Defendants claim that calculating the sums in this way means that they do not owe Plaintiffs anything. (Opp. 20–23.) Even if Plaintiffs were right that Defendants' figures are errantly premised on the "Program Year" rather than the "Policy Year," as required by the parties' contract, (*see* Doc. 41 ¶ 4; Doc. 18-3 at 22), I cannot say that they have met their burden to show that a mandatory injunction should issue, which "is much higher" than the no genuine dispute of material fact standard on "a defendant's motion for summary judgment." *Mazurek*, 520 U.S. 968 at 972. The question of contractual interpretation (1) merits

further briefing and likely discovery, and (2) is clearly not dispositive of the issue of whether Plaintiffs materially breached the Reinsurance Agreement during the pendency of the contractual relationship. *See Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*, 361 F. Supp. 2d 283, 295–96 (S.D.N.Y. 2005) ("Courts and commentators have long recognized that materiality is primarily a question of fact, the resolution of which is necessarily a function of context and circumstances." (internal quotation marks omitted)) (collecting cases).  All Plaintiffs have on that front is the cursory and undetailed Net Settlement Report, (Doc. 18–4), which does not substantiate their claims that they executed the contract in good faith, or that they failed to cede more than allowed under the Reinsurance Agreement, not to mention the additional "clear accounting errors" and "additional offsets" that Defendants claim Plaintiffs perpetrated and ignored, respectively, (*see* Opp. 21–23.)

Plaintiffs cite *Frank Felix Associates., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284 (2d Cir. 1997), as support for their argument that the dispute over the calculations "cannot defeat Coaction's claim for breach of contract."  (Reply 6.)  In *Frank Felix Associates., Ltd.*, the court held that a "failure to return [a] tape drive" by an agreed upon date "was not a material breach" in light of the other obligations incurred pursuant to the parties' contract, including a payment "of $50,000." *Id.* at 286.  These facts are readily distinguishable from those at issue here, where Defendants argue that Plaintiffs violated the express terms of the parties' agreement by calculating Defendants' liability for the year of the non-payment improperly.  (Opp. 18–20.) Courts have recognized that failure to abide by good faith clauses may meet the materiality standard when "intensely factual" elements are satisfied. *See Bear, Stearns*, 361 F. Supp. 2d at 296–97.  Plaintiffs cannot avoid this conclusion by incorrectly claiming that the evidence

11

Defendants present is irrelevant as a matter of law and with conclusory argument in a parenthetical that Defendants are incorrect. (Reply 6.)

Because the most recent caselaw suggests that the test for a mandatory injunction is a conjunctive one, I could end the inquiry here. *See supra* § III.A.1. However, because I also find that Plaintiffs have not made "a strong showing of irreparable harm" or demonstrated that "extreme or very serious damage" will result from denying their motion and so fail to meet their heightened burden under the mandatory injunction standard, I will analyze that prong separately as well.

### 3. Extreme or Very Serious Damage

Although Plaintiffs' arguments might be sufficient to show that they will suffer irreparable harm absent a preliminary injunction, Plaintiffs fail to show that "extreme or very serious damage will result from a denial of preliminary relief," or meet the "heightened standard" of a "'strong showing' of irreparable harm" that would justify the invocation of a mandatory injunction. *Hulinsky*, 670 F. Supp. 3d 100, 109 (S.D.N.Y. 2023) (quoting *Isaac*, 2022 WL 3290679, at *1.

As an initial matter, Plaintiffs' argument that I am "bound to apply" a state court decision that found that a Schedule F penalty against New York Marine General constituted irreparable harm, *see Millennia Assurance, Inc.*, 241 A.D.3d 1090, is misplaced. (*See* Reply 2.) "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). "Whether a particular state rule of decision is 'substantive' under *Erie* is a question of *federal* law." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013) (emphasis in original) (citing

*Sun Oil Co. v. Wortman*, 486 U.S. 717, 726–27 (1988); *Hanna v. Plumer*, 380 U.S. 460, 465–66 (1965)).

Here, Plaintiffs move for a preliminary injunction "pursuant to Rule 65 of the Federal Rules of Civil Procedure." (Doc. 17.)  Although the Second Circuit does not appear to have directly addressed this question, virtually every federal court that has decided this issue has determined that the Supreme Court in *Hanna v. Plumer*, "held that by examining the policies intrinsic in the *Erie* rule, federal courts are required to apply the federal rules of civil procedure to the exclusion of any contrary state procedure as long as the rule is both constitutional and within the scope of the rules' enabling act," 380 U.S. 460 (1965), and "that rule 65 meets the criteria of *Hanna,* and therefore" courts have applied "federal procedure to determine whether the preliminary injunction was properly issued." *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991); *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 101–02 (6th Cir. 1991); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 n.4 (3d Cir. 1989) ("'[T]here can be little doubt that [Rule 65(a) and (b)] are procedural in nature.") (citing 11 A. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2943 (3d ed. 1973)); *see also Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 n.3 (1999) ("Although this is a diversity case, respondents' complaint sought the injunction pursuant to Rule 65, and the Second Circuit's decision was based on that rule and on federal equity principles."); *Dong v. Miller*, No. 16-CV-5836, 2018 WL 1445573, at *3 (E.D.N.Y. Mar. 23, 2018) ("Plaintiffs seek a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. . . . They do not argue that because this is a diversity case, the availability of an injunction should be determined by state law, so the court need not consider this argument.") (citing *Grupo Mexicano*, 527 U.S. at 318 n.3); *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11-CV-3489, 2013 WL

1915330, at \*2 (S.D.N.Y. May 9, 2013) (similar).  On matters of substantive state law interpretation, it is undisputed that I would be bound by such a state appellate decision, "unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010).  But here, because I am interpreting an issue of federal procedural law, I am not so bound.

Nonetheless, I do treat the decision in *Millenia Assurance, Inc.*, as persuasive precedent in my determination in whether Plaintiffs have shown "irreparable harm."  However, as noted previously, Plaintiffs' burden is heightened under these circumstances, where they seek to "command[] some positive act" and so must demonstrate that "extreme or very serious damage" would occur absent an injunction.  *Cacchillo*, 638 F.3d at 406.  Because Plaintiffs must meet this higher burden to prove that a mandatory injunction should issue in federal court,[3] I need not ascertain whether they would have met their burden to satisfy the lower standard of "irreparable harm" that was found in *Millennia Assurance, Inc*, 241 A.D.3d at 1091.  ("[P]laintiff has established the element of irreparable harm").  Here, Plaintiffs claim that they will suffer "cascading impacts that are difficult to ascertain" as a result of being "required to take a Schedule F penalty," in 2025 because of Defendant PC3's failure to post security in a "Regulation 114" trust account.  (Mot. 1.)  However, I do not find that the facts in this case present such an extreme circumstance that Plaintiffs cannot be made whole at the conclusion of the case and would suffer very serious damage were I to deny the pending motion for a preliminary injunction, for three reasons.

---

[3] I do not consider the state law question of what burden of proof is required to prove a mandatory injunction under analogous New York procedural remedies to Rule 65 or whether the *Millennia Assurance* court applied the correct standard there, as here I apply federal procedural law under *Erie* and *Hanna*.

*First,* Plaintiffs do not complain of any concrete and irreparable harms that resemble those outlined in *Tom Doherty* as capable of meeting the "heightened standard" of "extreme or very serious," 60 F.3d at 34–35, such as instances "where a party is threatened with the loss of a business," *id.* at 37 (citing *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970)), or where a party suffers "substantial losses of sales beyond those of the terminated product," *id.* at 38 (citing *Interphoto Corp. v. Minolta Corp.*, 417 F.2d 621, 622 (2d Cir. 1969) (per curiam)). Plaintiffs fail to meet their burden "where the facts demonstrate no loss of goodwill, but only provable monetary damages from the loss of a profitable line of business." *Id.* at 37. Plaintiffs' allegations of irreparable harm sound in such goodwill and reputational damage, as Plaintiffs' main claim is that the Schedule F penalty "is likely to negatively contribute to Coaction's BCAR, Risk-Based Capital Ratio, AM Best rating, and T Listing." (Mot. 11.) However, "absent extraordinary circumstances, generalized damage to reputation falls short of irreparable injury," and therefore certainly cannot meet the heightened pleading standard predicate to a mandatory injunction. *People's Club Int'l, Inc. v. People's Club of Nigeria Int'l-New York Branch, Inc.*, No. 18-CV-1144, 2018 WL 3581697, at *2 (D. Conn. July 25, 2018) (quoting *TGG Ultimate Holdings, Inc. v. Hollett*, No. 16-CV-6289, 2016 WL 8794465, at *4 (S.D.N.Y. Aug. 29, 2016)). Most courts that have ruled on this issue have found that such reputational damages alone do not support the issuance of a mandatory injunction unless accompanied by a concrete threat to the viability of the movant's business or to its customer base. *See, e.g.*, *Langmead v. Monroe Cnty. Off. of Sheriff,* No. 11-CV-6003, 2013 WL 3759958, at *8 (W.D.N.Y. July 15, 2013) (movant's argument that a "forced resignation damaged his reputation and has made it difficult for him to find work, and that he has gone into debt and faces foreclosure, [did] not justify, in the Court's mind, issuing a mandatory injunction"); *SEG Sports*

15

*Corp. v. State Athletic Comm'n*, 952 F. Supp. 202, 205 (S.D.N.Y. 1997) ("long-range damages to plaintiffs' reputation is purely speculative").

*Second*, as Defendants correctly point out, Plaintiffs have not yet taken a Schedule F penalty, which makes this case factually different from *Millenia Assurance*, *Inc.*, and renders the harm more attenuated and speculative. (Opp. 12–14.) Plaintiffs have not introduced specific facts showing that the timing of the Schedule F penalty is certain to occur during the pendency of this litigation. Plaintiffs may argue that they would be "burned at the stake" for attempting the maneuvers proposed by Defendants to avoid a Schedule F penalty in 2025, (Reply 4), but the fact that the penalty has not been imposed yet means that the harms alleged as result of purportedly taking such a penalty are inherently more "remote" and "speculative" than they would have been had the penalty been already incurred. *See Tom Doherty*, 60 F.3d at 37; *see also Advent Software Inc. v. G2 FT, LLC*, No. 18-CV-3750, 2018 WL 4278350, at \*1 (S.D.N.Y. May 4, 2018) ("The possibility that [the plaintiff's] commercial relationships and reputation will be harmed as a result of that communication is too speculative and remote to support a finding of irreparable harm.").

*Third*, the cases that Plaintiffs cite for the proposition that failure to post security, generally, can support irreparable harm, are distinguishable. The question before me is not whether failure to deposit the collateral will cause Plaintiffs extreme or very serious damage, but rather whether failure to deposit the collateral right now, during the pendency of the lawsuit, potentially causing Plaintiffs to take a Schedule F penalty, will cause such harms. Therefore, at least one of the cases that Plaintiffs cite in their brief, which explains the rudimentary proposition that parties to a contract that includes a security or collateral have "a bargained-for right to collateral," making "monetary damages [] not an adequate remedy at law," is inapposite. *Liberty*

16

*Mut. Fire Ins. Co. v. JDS Constr. Grp. LLC*, No. 21-CV-01931, 2023 WL 6143559, at *6 (S.D.N.Y. Sept. 20, 2023) (internal quotation marks omitted).  This case may support Plaintiffs' claims for specific performance, as they request in their complaint (*see* Compl. ¶¶ 162–71, 208–16), but it does not show that Plaintiffs will be irreparably harmed by the taking of a Schedule F penalty during the pendency of this litigation, if such a penalty should come to pass.

Because I find that Plaintiffs have demonstrated neither "a clear and substantial likelihood of success on the merits" nor that "extreme or very serious damage" would occur absent a preliminary injunction, the motion for a preliminary injunction is DENIED.

### B.    *Security Under New York Insurance Law § 1213*

In the alternative, Plaintiffs argue that Defendants are required to post security to the court pursuant to New York Insurance Law § 1213.  (Mot. 13–15; Reply 8–10).  Section 1213 "subject[s] certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts."  N.Y. Ins. Law § 1213(a).  These "certain insurers" are those that "issue[] or deliver[] in this state," insurance policies to "residents of this state" "while not authorized to do business in this state."  *Id.*  Such insurers must "deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding."  N.Y. Ins. Law § 1213(c)(1)(A).  "[Section] 1213 applies to those engaged in reinsurance transactions."  *Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*, 212 F.3d 138, 141 (2d Cir. 2000) (finding that both the jurisdictional and security provisions of § 1213 applied to reinsurers).

17

"The four bases of jurisdiction enumerated in section 1213(b) [] all require that the relevant policy be issued or delivered in New York." *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 175 (E.D.N.Y. 2015.)  The phrase "issued or delivered" "applies to policies that cover both insureds and risks located in New York." *See Carlson v. Am. Int'l Grp., Inc.*, 30 N.Y.3d 288, 305, 308 n.8 (N.Y. 2017); *see also id.* at 308–09 (criticizing a dissent for an overly restrictive interpretation of "issue or deliver" that did not include situations "where both insureds and risks are located in this state" and referencing Insurance Law § 1213).

The Reinsurance Contract in question clearly covers both insureds and risks located in New York.  Several Plaintiffs are indisputably New York residents, (*see* Compl. ¶¶ 7–9), and the Niche Management Agreement signed by the parties is specifically designed to cover New York risks, (Doc. 18-2, § 1.19).  Moreover, the parties agreed to "bring any action or proceeding in respect of any claim arising out of or related to this Agreement exclusively in the United States District Court for the Southern District of New York or any New York State court sitting in New York City."  (Doc. 18–1 art. 20.)  The parties also agreed that the contract would be "governed and construed in accordance with the laws of the State of New York."  (*Id.* art. 17.)[4]  Therefore, this is not a case like *Quanta Specialty Lines Insurance Company v. Investors Capital Corporation*, where the insured was a resident of Delaware and Massachusetts, not of New York. No. 06-CV-4624, 2008 WL 1910503, at *8 (S.D.N.Y. Apr. 30, 2008).  Nor is it one like *Associated Aviation Underwriters v. Arab Insurance Group (B.S.C.)*, in which Plaintiffs failed to

---

[4] Plaintiffs' alternative argument, (*see* Reply 8), that because the parties included a New York choice of law clause in their contract, that Defendants must *ipso facto* post security pursuant to § 1213(c)(1), is wrong.  When the parties agreed for their contract to be governed by New York law, they incorporated all of § 1213, including the jurisdictional limitations that are necessarily a part of § 1213(a).  *See Blau*, 124 F. Supp. 3d at 175 ("[T]he Substantive provisions of section 1213(b) must be read in conjunction with the legislative intent of the statute, which is codified in section 1213(a).").  If the parties wanted to exclude the jurisdictional limitations contained in Section 1213(a), they could have and should have done so expressly in their agreement.

18

show that "defendants have any purposeful contacts with New York, such that they may reasonably foresee the prospect of defending a suit here." No. 02-CV-4983, 2003 WL 1888731, at *6 (S.D.N.Y. Apr. 16, 2003) (explaining that in that case there was "no allegation that the parties entered into a forum selection clause voicing a preference for any jurisdiction, let alone for New York").[5] Therefore § 1213(c)(1) applies and requires Defendants to deposit security with the court "to secure payment of any final judgment which may be rendered in the proceeding." N.Y. Ins. Law § 1213(c)(1)(A).

Although I will not rule on the amount of pre-answer security required today, given the purportedly "devastating financial burden that posting $6,028,331.99," will have on Defendants (Opp. 24), and the potential concerns raised by Defendants about the calculation of that sum, (*see id.* at 19–23), it is plausible that the "amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in [the proceeding]," may be less than $6,028,331.99. *See Kraus v. Monticello Ins. Co.*, 5 Misc. 2d 591–92 (Sup. Ct. 1957), *aff'd*, 7 A.D.2d 632 (1958) (finding that the appropriate sum to be deposited under § 1213 was $8,000 rather than the $24,000 requested by the plaintiffs); *Curiale v. Ardra Ins. Co.*, 88 N.Y.2d 268, 272–73 (N.Y. 1996) (court "ordered appellant to post security in the amount of $10,351,877.38" when final judgment was for "$16,351,398.11"). Indeed, Plaintiffs cite no cases that support their position that because there is a bond requirement under § 1213, the bond must automatically be the amount that Plaintiffs claim they are allegedly owed in unpaid collateral.

---

[5] Defendants put forward no real argument that they "do not have 'minimum contacts' with New York and therefore the maintenance of this suit would offend 'traditional notions of fair play and substantial justice,'" in violation of constitutional personal jurisdiction principles. *Associated Aviation Underwriters*, WL 1888731, at *6 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, (1945)). Instead, Defendants conflate the constitutional question of minimum contacts with the state law question of whether § 1213 applies.

I direct the parties to meet and confer on an appropriate amount of security by January 6, 2026 and file a submission of no more than five pages with their agreement or their respective positions on the appropriate amount of security under § 1213(c)(1) by January 13, 2026.  All deadlines relating to Defendants' Motion to Dismiss, (Doc. 43), are adjourned *sine die* in the interim.

### C.     *Expedited Discovery*

Finally, Plaintiffs move for expedited discovery of "the membership agreements and guaranties that PC3 members' entered into." (Mot. 15.)  They do so because the Niche Management Agreement requires eMaxx to maintain these records and provides Coaction with the right to inspect these documents, yet Coaction has, to date, failed to turn them over for inspection.  (*Id.* at 15–17.)

In opposition, Defendants allege that requests for expedited discovery must meet a four part test from *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) ("[C]ourts should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.").  However, as I have previously explained, "courts in this District have shifted away from the *Notaro* test and moved towards a more flexible 'good cause' or 'reasonableness' standard." *In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, No. 14-CV-4242, 2014 WL 12959675, at *1 (S.D.N.Y. July 23, 2014) (collecting cases).  "I will follow the more recent precedents set by courts in this District and use the 'flexible standard of reasonableness and good cause.'" *Id.* (citing *adMarketplace, Inc. v. Tee Support, Inc.*, No. 13-CV-5635, 2013 WL 4838854, at *2

20

(S.D.N.Y. Sept. 11, 2013)); *see also Strike 3 Holdings, LLC v. Doe,* No. 23-CV-11212, 2024 WL 1704940, at \*2 (S.D.N.Y. Apr. 19, 2024); *SingularDTV, GmbH v. Doe*, 637 F. Supp. 3d 38, 42 (S.D.N.Y. 2022).

Here, I find that the discovery sought is reasonable and that good cause exists, because the request is narrowly tailored to a small number of identifiable documents that will not be burdensome on Defendants to produce, and Defendants agreed to permit Plaintiffs to inspect these documents under the Niche Management Agreement. (*See* Mot. 16.)

Therefore, Plaintiff's request for expediated discovery is GRANTED.

## IV.    Conclusion

For the reasons outlined above, Plaintiff's motion for a preliminary injunction is DENIED. Plaintiffs' requests for a bond and expedited discovery are GRANTED. The parties will meet and confer on an appropriate amount of security under § 1213(c)(1) by January 6, 2026 and file a submission, no more than five pages, with their agreement or their respective positions on the appropriate amount of security under § 1213(c)(1) by January 13, 2026. Defendants will also include a short statement regarding diversity jurisdiction in this submission. *See supra* at 2 n.1. All deadlines relating to Defendants' Motion to Dismiss, (Doc. 43), are adjourned *sine die* in the interim.

SO ORDERED.

Dated: December 23, 2025
        New York, New York

Vernon S. Broderick
United States District Judge

21